**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLYN RYLAND, | No. CIV S-07-2069-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding pro se, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 25) and defendant's cross-motion for summary judgment (Doc. 27).

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 29, 1996. In the application, plaintiff claims that disability began on January 3, 1996.[1] Plaintiff claims that disability is caused by a ulcerative colitis. Plaintiff was initially found to be disabled as of January 3, 1996. In a subsequent review decision issued in August 2001, his disability was determined to have continued. On July 7, 2004, however, it was determined that plaintiff was no longer disabled. Following denial of reconsideration of the July 2004 decision, plaintiff requested an administrative hearing, which was held on May 31, 2006, before Administrative Law Judge ("ALJ") Plauche F. Villere, Jr. In a November 21, 2006, decision, the ALJ concluded that plaintiff is not disabled as of July 1, 2004, based on medical improvement in his condition which is related to the ability to work. Specifically, the ALJ made the following relevant findings:

1. The most recent favorable decision finding that the claimant continued to be disabled – the "comparison point decision" or "CPD" – is dated August 28, 2001;

2. At the time of the CPD, the claimant had the following medically determinable impairments: asthma, ulcerative colitis, and Crohn's disease;

3. Between the date of the CPD and July 1, 2004, the claimant did not develop any additional impairments, and his existing impairments remained severe;

4. Medical improvement related to the ability to work occurred as of July 1, 2004

5. As of July 1, 2004, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in the regulations;

6. As of July 1, 2004, the claimant had the residual functional capacity to perform the full range of light work;

///

---

[1] Although, plaintiff stated in a disability report submitted with his application that his impairments did not cause him to stop working until June 1996.

   7.  As of July 1, 2004, the claimant was unable to perform past relevant work; and

   8.  As of July 1, 2004, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy.

After the Appeals Council declined review on April 13, 2007, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following evidence, summarized chronologically below:[2]

<u>April 23, 1996</u> – Agency consultative doctor Delbra Caradine, M.D., completed a residual functional capacity assessment and concluded that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, stand/walk/sit for six hours in an eight-hour day, and push/pull without limitation.  The doctor found no postural, visual, manipulative, environmental, or communicative limitations.  See CAR 100-07.[3]

<u>June 19, 1996</u> – Admission records from Conway Regional Medical Center reveal that plaintiff developed ulcerative colitis and was hospitalized for a flare-up of his symptoms. Notes show that plaintiff was unresponsive to outpatient therapy while tapering off steroids.  See CAR 108-11.

/ / /

/ / /

/ / /

---

  [2] Because the issue in this case is whether plaintiff's condition improved between August 2001 and July 2004, the court will focus on records between these dates.  Select earlier records are mentioned by way of background.

  [3] It is curious that plaintiff was found to have been disabled beginning January 1996 given the agency doctor's assessment in April 2003 indicating the ability to do at least the full range of light work.

<u>July 8, 1996</u> – Kevin D. Heath, M.D., of Conway Regional Medical Center reported on plaintiff's condition.  The doctor stated that plaintiff has recently been hospitalized, was currently stable, but " as is the nature of [plaintiff's] illness, can be expected to have flares of acute disease and complications from time to time."  <u>See</u> CAR 139.

<u>November 26, 1996</u> – Plaintiff was seen at Conway Regional Medical Center with complaints of acute abdominal pain related to his colitis.  <u>See</u> CAR 179-80.

<u>December 9, 1996</u> – Medical records from this date reveal that plaintiff's doctors were attempting to "distinguish between UC and possible Crohn's."  <u>See</u> CAR193.

<u>December 29, 1999</u> – Plaintiff underwent an esophagogastroduodenoscopy with biopsy and flexible sigmoidoscopy with biopsy, performed by Alonzo Williams, M.D.  The doctor assessed acute gastritis, duodenitis, hemorrhoids, and noted a "[h]istory of Crohn's disease with no active evidence of colitis at this exam."  <u>See</u> CAR 344.  Biopsy results were negative for acute inflammation.  <u>See</u> CAR 380.

<u>November 2, 2000</u> – Plaintiff underwent an esophagogastroduodenoscopy with biopsy.  Dr. Williams assessed acute esophagitis and diffuse gastritis.  <u>See</u> CAR 343.  Biopsy results were negative for active gastritis and showed only mild superficial chronic gastritis.  <u>See</u> CAR 378.

<u>November 22, 2000</u> – David Kolb, M.D., reported on an abdominal ultrasound, stating that the test was normal.  <u>See</u> CAR 432.

<u>April 24, 2001</u> – Dr. Williams reported on plaintiff's condition.  He stated that plaintiff "presents with a history of ulcerative colitis and Crohn's disease for which he takes several different medications. . . ."  The doctor added that plaintiff's symptoms "worsen when he has flare of his Crohn's disease."  <u>See</u> CAR 350.

<u>August 30, 2001</u> – In the CPD, it is noted that "[t]he doctors and other trained personnel who decided that you are still disabled believe that your health may improve."  <u>See</u> CAR 408.

<u>July 9, 2003</u> – Plaintiff underwent another esophagogastroduodenoscopy performed by doctor Williams.  The doctor assessed acute esophagitis, diffuse gastritis, and duodenitis.  He recommended medication and "[a]nti-reflux measures and diet."  <u>See</u> Exhibit B2F; CAR 341.

<u>August 23, 2003</u> – Plaintiff was admitted to the hospital with acute abdominal pain.  The hospital notes indicate an admitting diagnosis of Crohn's disease and a discharge diagnosis of "[a]cute gastritis/gastroenteritis superimposed on Crohn's disease."  Plaintiff was instructed to continue with his medications and follow up with Dr. Williams.  <u>See</u> CAR 358.

<u>August 25, 2003</u> – Plaintiff underwent an abdomen and pelvic CT scan with contrast.  The doctor reporting on the scan results stated: "I see no radiologic evidence of Crohn's disease."  CT scans were normal.  <u>See</u> CAR 367.

<u>September 5, 2003</u> – Medical records from Francine Bruyneel, M.D., indicate that plaintiff had received high-dose steroids intravenously for treatment of Crohn's disease the week prior and has developed steroid-induced acne as a result.  <u>See</u> CAR 385.

<u>December 8, 2003</u> – Plaintiff reported to Dr. Williams that he had "no GI complaints."  <u>See</u> CAR 372.

<u>March 2, 2004</u> – Treatment notes from Dr. Williams reveal that plaintiff did not report any complaints relating to his colon.  There is no mention in these notes of symptoms or problems related to colitis or Crohn's disease.  <u>See</u> CAR 371.

<u>June 28, 2004</u> – Agency consultative doctor R.W. Beard prepared a residual functional capacity assessment.  He concluded that plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, stand/walk/sit for six hours in an eight-hour day, and push/pull without limitation.  The doctor found no postural, visual, manipulative, environmental, or communicative limitations.  Dr. Beard noted at the end of his assessment that plaintiff had no "GI complaints" in September 2003 or December 2003, and no colon complaints as of March 2004.  <u>See</u> CAR 388-95.

<u>July 22, 2004</u> – Plaintiff reported to James W. Bryan, M.D., with complaints of left shoulder pain that began after working out in the weight room. At that time, plaintiff reported that his Crohn's disease is "under good control." See CAR 399.

<u>July 6, 2006</u> – Agency examining doctor Jenna Brimmer, M.D., performed a comprehensive internal medicine examination. Dr Brimmer reported the following history:

> The claimant was diagnosed with Crohn's disease in 1996. He presented at that time with weight loss and bloody diarrhea. He had a colonoscopy at that time which was positive for colitis. He has had a colonoscopy about once or twice per year usually with flares since then but his last was about a year ago mainly related to his lack of having a gastroenterologist specialist since he has moved to California from Arkansas. His ongoing symptoms include abdominal pain which he rates between 4-10/10 in severity. It is worse when he has a "flare." Also when he has a flare he gets bloody diarrhea. These occur . . . 5-6 times per year. They generally last about a week. He stays in bed and takes medications including prednisone, Asacol, and 6MP. He is generally able to treat himself as an outpatient when he has a flare. His last hospitalization was in 2003. The claimant says his weight fluctuates related to his flares and treatments and when he does not have bloody diarrhea he generally just has loose stools. The claimant has not seen a gastroenterologist since June 2005 again because he moved to California but continues to have prescription medications prescribed by this specialist which he uses as needed.

As to activities of daily living, plaintiff reported to Dr. Brimmer that he cooks, does dishes, mops, vacuums, and laundry "unless his abdominal pain is very severe with a flare." He also occasionally does yard work.

Following a physical examination, Dr. Brimmer reported:

> History of Crohn's disease. The claimant has relatively frequent flares approximately every other month lasting about a week. . . . He has not been hospitalized for this since the year 2003. He is quite functional when he is not having a flare and he seems to be able to manage himself with medications as an outpatient when he does have a flare.

The doctor opined that plaintiff could stand/walk for six hours in an eight-hour day, and sit without limitation. She also stated that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. She did not find any postural or manipulative limitations. She did, however, state that plaintiff should avoid infectious sources in the workplace due to his use of prednisone. See CAR 400-04.

August 16, 2006 – Plaintiff's treating physician, Steven Uzelac, M.D., referred plaintiff to see GI specialist Abdul Khaleq, M.D., at Sutter Medical Group.  In his referral notes, Dr. Uzelac stated that plaintiff has been diagnosed with Crohn's disease and that his last colonoscopy was"approx. 1 year prior."  See Doc. 19, p. 9.[4]

December 7, 2006 – Plaintiff was seen by Dr. Khaleq for consultation regarding his diagnosis of Crohn's disease.  The doctor reported the following to Dr. Uzelac:

> At this point, it is not clear if the patient's current symptoms are related to a flare up of Crohn's disease or other issues.  I think the evaluation should include a colonoscopy, and we shall obtain the patient's records. . . .

See Doc. 19, pp. 17-19.

December 14, 2006 – Plaintiff underwent a colonoscopy with biopsy performed by Dr. Khaleq.  The doctor reported:

> The findings include very minimal erythema of the terminal ileum in a patchy fashion which was biopsied.  No ulcers or erosions were noted.  There were not polyps or mass lesions.  In the colon I did not see any mucosal abnormalities, ulcers, mass lesions, strictures, or diverticulosis.  No vascular ectasias are noted. . . .

See Doc. 19, pp. 24-25.

December 15, 2006 – Andrea Ong, M.D., reported on results of biopsy samples taken the day before.  She stated:

> In neither the small bowel or colonic biopsies are there significant inflammatory changes.  No architectural distortion is seen.  No granulomas are identified.

See Doc. 19, p. 43.

February 27, 2007 – Dr. Khaleq's notes of his examination of plaintiff indicate a "history of questionable Crohn's disease" based on the most recent colonoscopy performed in December 2006.  See Doc. 19, pp. 15-16.

---

[4] All records in Doc. 19 were filed on April 19, 2008, in connection with plaintiff's request for voluntary remand by defendant.  These records are not part of the CAR and were not available to the ALJ.

<u>April 3, 2007</u> – Dr. Khaleq reported on his examination of plaintiff. Plaintiff complained of persistent diarrhea and abdominal pain. The doctor reported that plaintiff had lost three or four pounds since his last visit in February. Dr. Khaleq stated:

> At this point, it is not clear if the patient actually has active Crohn's disease as I did not see any evidence of this by his last colonoscopy, but he does have presumably the history of this. I am going to repeat his colonoscopy in the next few days to see if there is any evidence of this. . . .

Plaintiff was prescribed Vicodin for pain. He was given a total of 30 pills and directed to take them only as needed. <u>See</u> Doc. 19, pp. 13-14.

<u>April 11, 2007</u> – Hsichao Chow, M.D., performed a consultative evaluation and reported to Dr. Khaleq. Dr. Chow noted that plaintiff "has been on disability because of his problem although his symptoms have been minimal except during exacerbation." On physical examination, Dr. Chow observed that plaintiff was a "well-developed, well-nourished, very muscular man who works out regularly." The doctor's diagnosis was inflammatory bowel disease "between Crohn's disease and ulcerative colitis." <u>See</u> Doc. 19, pp. 20-23.

<u>May 14, 2007</u> – Dr. Khaleq prepared notes of his examination of plaintiff. The doctor reported that plaintiff is "currently doing much better" and "seems to be mainly in clinical remission" with epigastric discomfort "which is under control with over-the-counter antactids." Plaintiff reported no vomiting, dysphagia, or other symptoms. His treatment plan included reducing plaintiff's prednisone dosage gradually and starting injections of Remicade. <u>See</u> Doc. 19, pp. 11-12.

<u>August 30, 2007</u> – Dr. Khaleq prepared notes of his examination of plaintiff. The doctor stated that plaintiff "seems to be in clinical remission at this time" on medication. Plaintiff reported no abdominal pain. Recent laboratory evaluations were normal. Dr. Khaleq confirmed plaintiff's diagnosis of Crohn's disease which he characterized as moderate to severe but that plaintiff was "responding well" to medication. The doctor scheduled a follow-up appointment in six months. <u>See</u> Doc. 19, p. 10.

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV. DISCUSSION

In his two-page pro se motion for summary judgment, plaintiff asks that the court rule in his favor because his motion is timely and based on the administrative record and new evidence submitted on April 16, 2008. As indicated above, the central issue in this case is whether the ALJ erred in concluding that plaintiff's medical condition improved as of July 2004 such that he could do at least the full range of light work. It is not in dispute that plaintiff has ulcerative colitis and/or Crohn's disease, which are severe impairments, and that he was disabled

9

due to these impairments through June 2004. The only question is whether, despite these impairments, plaintiff could do light work as of July 2004. The court agrees with the ALJ that he can.

Agency consultative doctor R.W. Beard prepared a residual functional capacity assessment in June 2004 in which he opined that plaintiff could do the full range of light work. In particular, the doctor noted that plaintiff had not had any complaints related to his impairments since September 2003. This is consistent with the results of an abdominal CT scan performed in August 2003 in which no radiological evidence of Crohn's disease was observed, The court also notes that plaintiff reported to Dr. Williams in December 2003 that he had "no GI complaints." Similarly, when plaintiff was treated by Dr. Williams in March 2004, he did not report any complaints relating to GI problems and the doctor's notes do not mention any symptoms or problems related to colitis or Crohn's disease. On July 22, 2004, plaintiff reported to Dr. Bryan that his Crohn's disease was "under good control."

Turning to the medical records submitted in April 2008, those records confirm the ALJ's conclusion that plaintiff's condition had improved. In December 2006 Dr. Khaleq stated: "At this point, it is not clear if the patient's current symptoms are related to a flare up of Crohn's disease or other issues." A colonoscopy performed that same month revealed very minimal erythema of the terminal ileum, no ulcers or erosions, no polyps or mass lesions, no mucosal abnormalities, ulcers, mass lesions, strictures, or diverticulosis, and vascular ectasias. These test results caused Dr. Khaleq to question plaintiff's diagnosis of Crohn's disease by February 2007. By April 2007, Dr. Chow concluded that plaintiff's diagnosis was "between Crohn's disease and ulcerative colitis, and by May 2007, Dr. Khaleq concluded that plaintiff's condition was in clinical remission. In August 2007 Dr. Khaleq repeated his opinion that plaintiff's condition was in clinical remission and noted that he was responding well to medication.

/ / /

/ / /

As to whether the improvement in plaintiff's condition related to his ability to work, the court again notes that agency doctor Beard concluded in June 2004 that plaintiff could do the full range of light work.  The court also notes repeated references to plaintiff working out in the gym and, in particular, Dr. Chow's observation that plaintiff was a "well-developed, well-nourished, very muscular man who works out regularly."  In July 2006 agency examining doctor Brimmer concluded that plaintiff could perform at least the full range of light work, if not more.  From this, it is clear that plaintiff could do at least light work as of June 2004.  Therefore, the ALJ's conclusion that plaintiff was not disabled as of July 2004 is supported by substantial evidence.  Plaintiff has not presented any evidence to suggest otherwise.

### V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 25) is denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 27) is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: November 21, 2008

                                              **CRAIG M. KELLISON**
                                              UNITED STATES MAGISTRATE JUDGE